UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAWN MCSWAIN,

             Plaintiff,

v.

UNKNOWN HEINEMAN,
*et al.*,

             Defendants.

_____/

Case No. 1:21-cv-317

Hon. Hala Y. Jarbou

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by Shawn McSwain (referred to as "plaintiff" or "McSwain"), a state prisoner in the custody of the Michigan Department of Corrections (MDOC).

## I.     Background

On May 11, 2020, McSwain filed this action against 25 defendants in the United States District Court for the Eastern District of Michigan ("Eastern District").   Compl. (ECF No. 1). On February 9, 2021, McSwain filed an amended complaint which named only two defendants employed at the Lakeland Correctional Facility (LCF) in Coldwater, Michigan, Corrections Officer (CO) Kathleen Heinemann and Warden Bryan Morrison.   Amend. Compl. (ECF No. 47). On April 14, 2021, the court transferred the case to this district.   *See* Order (ECF No. 57).[1]

---

[1] The order transferring the case references additional claims made by McSwain. These claims appear to arise from statements in McSwain's declarations attached to the amended complaint, which mention actions by ADW Chrisman and CO Clayman for retaliation (writing false misconducts), placing him in segregation, and transferring him to another facility. *See* Declarations (ECF No. 47, PageID.197-200).   While Chrisman and Clayman were named as defendants in the original complaint, they are not parties to this action, which is based on the allegations in the amended

In his amended complaint, McSwain alleged that CO Heinemann confiscated his wheelchair on February 26, 2020.  Amend. Compl. at PageID.193.  At 8:05 p.m., Heinemann met McSwain at the door of the housing unit and told him to get out of the wheelchair.  *Id*.  When McSwain told Heinemann that he could not walk, she told him to get his "black ass" out of the chair.  *Id*.  McSwain alleged that after Heinemann took his wheelchair, he fell and injured his right arm and left leg.  *Id*.  McSwain also alleged that Warden Morrison "is legally responsible for the operations of lakeland correctional facility [sic] and for the welfare of all inmates in that prison."  *Id*. at PageID.192. The gist of McSwain's amended complaint is that the two defendants were deliberately indifferent to his medical needs in violation of the Eighth Amendment.  *Id*. at PageID.193. McSwain seeks $10 billion in compensatory damages and an injunction "ordering Defendant C/O Heinemann to stop abusing her authority and discriminating against the handicap [sic] and mentally ill prisoners." *Id*. at PageID.194.

This matter is now before the Court on defendant Heinemann and Morrison's motion for summary judgment on the basis of exhaustion (ECF No. 63).

## II.     Defendants' motion for summary judgment

### A.     Legal standard for summary judgment

Defendants seek summary judgment on the ground that McSwain failed to exhaust his administrative remedies prior to filing this lawsuit.   "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).   Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

---

complaint.  *See Glass v. The Kellogg Co.*, 252 F.R.D. 367, 368 (W.D. Mich. 2008) ("[O]nce accepted, an amended complaint replaces the original.").

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.   Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).   "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."   *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

## B.   Failure to Exhaust

### 1.   Exhaustion requirement

The PLRA provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies.   *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).   A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741.   One reason for creating prisoner grievance procedures under the PLRA

3

was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court.   This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).   In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.   *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'"   *Jones*, 549 U.S. at 218.   Finally, even if a prisoner complies with the grievance procedures, the grievance must give fair notice of the misconduct or mistreatment as measured against the claim alleged in the prisoner's complaint.   *See Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006).

### 2.    MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective March 18, 2019).   A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control.   *Id.* at ¶ Q.   If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff.   *Id.* at ¶¶ Q and S.   The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely.   Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).   Dates, times, places and names of all those involved in the issue being

4

grieved are to be included.

*Id.* at ¶ S (emphasis in original).    The prisoner must send the Step I grievance to the appropriate grievance coordinator.    *Id.* at ¶ W.    If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator.    *Id.* at ¶ DD.    Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section.    *Id.* at ¶ HH.

### 3.    Discussion

There is no evidence that McSwain exhausted any grievances against LRF employees CO Heinemann and Warden Morrison.    McSwain's grievance history set out in his MDOC Prisoner Step III Grievance Report (ECF No. 64-3, PageID.46), lists only one grievance which McSwain pursued through Step III, that being ARF-20-03-0554-17I ("554").    Grievance 554 involved an incident which occurred at the Gus Harrison Correctional Facility (ARF) on March 15, 2020, involving an employee at that facility, CO Reasoner.    *See* Grievance 554 (PageID.50).

It appears that McSwain filed, but did not exhaust, a grievance regarding the February 26, 2020 incident.    McSwain attached a copy of a Step I grievance to his amended complaint which complained of CO Heineman's confiscation of his wheelchair on February 26, 2020. *See* Grievance LCF-21-01-0068-28A ("68") (ECF No. 47, PageID.202).    However, McSwain did not file Grievance 68 until January 12, 2021, about 11 months after the incident.    *Id*. The MDOC rejected Grievance 68 with the following explanation, "Duplicate to LCF-20-03-0215-28E, did not file appeal/filed new grievance & untimely see attached."    *Id*.

5

McSwain's amended complaint also included an undated note from McSwain to "Grievance Coordinator" referring to a phone interview with Captain Losinski on June 15, 2020 (ECF No. 47, PageID.201).[2]   A response from an MDOC official states:

Per PD 03.02.130-

You cannot file a new grievance on previously filed grievance.   Per same PD you should have requested an appeal within the allotted time to proceed to Step II.   Your grievance LCF-20-03-00215 was rejected & you were sent the response @ ARF on 3-20-2020.

*Id*.   From these documents, the Court can infer that McSwain filed a similar grievance in 2020 which was rejected.   There is no evidence that McSwain properly exhausted this earlier grievance through Step III.

Finally, McSwain filed a response to defendants' motion for summary judgment using a "motion" form captioned for the Eastern District.   McSwain Response (ECF No. 66). This paper was non-responsive to defendants' motion for summary judgment.   Rather, the paper re-stated some of McSwain's allegations and re-asserted his demand for $10 billion.   *Id*. at PageID.53-59.

Based on this record, McSwain did not properly exhaust a grievance against defendants CO Heinemann and Warden Morrison.   *Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93.   Accordingly, defendants' motion for summary judgment should be granted.[3]

---

[2] *See* Summary of Investigatory Interview (ECF No. 47, PageID.195-196).   The Court notes that the interview transcript does not reference a grievance.

[3] Because McSwain presented no evidence to demonstrate that he properly exhausted any claims against defendants, it unnecessary to address defendants' additional arguments that McSwain failed to state § 1983 claims against them in their official capacities.

6

III.    **Recommendation**

For the reasons set forth above, I respectfully recommend that defendants CO Heinemann and Warden Morrison's motion for summary judgment (ECF No. 63) be **GRANTED** and that this action be **TERMINATED**.


Dated:   December 29, 2021                                   /s/ Ray Kent
                                                             United States Magistrate Judge


**ANY OBJECTIONS** to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.   All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).   Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.   *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).